[No. 8312. *En Banc.* November 2, 1909.]

*In the Matter of the Application of* MARY A. CLERF *for a Writ of Mandamus.*[1]

MANDAMUS—REMEDY BY APPEAL—TO CONTROL ACTIONS OF COURT—DISCRETION. Mandamus will not lie to compel a court to render a decision in a cause where, after trial and submission, the court found that other parties were necessary to a complete determination of the case, and ordered them brought in; since the court is exercising its discretion and not refusing to proceed with the cause; and the remedy for error, if any, is by appeal from the final judgment.

SAME—REFUSING TO PROCEED WITH CAUSE—ESTOPPEL. A plaintiff who misleads the court as to her course, after being ordered to bring in new parties, delaying many months without action, is not in a position to complain of the dilatoriness of the trial judge, where he proceeded with reasonable diligence as soon as plaintiff's refusal to bring in new parties was made known.

DISMISSAL AND NONSUIT—NECESSARY PARTIES—REFUSING TO BRING IN—RIGHTS OF INTERVENERS. An action to determine the right to the waters of a stream cannot be dismissed on plaintiff's refusal to bring in new parties, after other parties had by leave of court intervened and asked affirmative relief.

PARTIES—NEW PARTIES. The right of the court to order necessary parties to be brought in is inherent, and is conferred by Bal. Code, § 4840.

[1]Reported in 104 Pac. 622.
30—55 WASH.

Application filed in the supreme court September 24, 1909, for a writ of mandamus to compel the superior court for Kittitas county, Kauffman, J., to adjudicate a cause upon the issues and evidence presented. Writ denied.

*A. Mires* and *Graves & McDaniels*, for petitioner.

*Pruyn, Streff & Hoeffer*, for respondent.

FULLERTON, J.—This is an application for a writ of mandate. The relator avers that on or about May 13, 1905, her predecessor in interest, as plaintiff, began an action against certain named defendants, the object and purpose of which was to obtain a judgment and decree adjudging the plaintiff to have a prior and paramount right, as against the defendants, to use the waters of a certain stream known both as Caribou creek and Cherry creek, to the extent of 370 inches of water, miners' measure, under a four-inch pressure, for stock and domestic purposes and for the purpose of irrigating certain land then owned by plaintiff; claiming such right for the purposes stated by reason of a first and prior appropriation of such waters and their application to the uses mentioned, made by himself and by his predecessors in interest to whose rights he succeeded.

She further averred that thereafter certain parties were dismissed from the action, and certain others intervened and became parties thereto by leave of court; that the plaintiff died, and that she succeeded to all his rights and interests, and was substituted as plaintiff by permission and order of the court; that the defendant and interveners filed pleadings in which they controverted the plaintiff's claim, and set up and claimed interests in the waters of the creek adverse to the claim of the plaintiff, which they alleged to be prior and paramount thereto. That thereafter the cause was assigned for trial, and between March 2, 1908, and March 6, 1908, was tried to the court, each party submitting evidence in support of their several allegations, finally submitting the cause to the court for adjudication. That in April, 1908, the court

announced, in substance, that it was unable to find that the
plaintiff was entitled to any prior rights to the waters of the
stream by virtue of prior appropriation, but that the waters
must be apportioned among all of the owners of land riparian
to such stream according to acreage, and that no apportion-
ment or final judgment could be entered without making par-
ties to the action the owners of all the lands riparian to such
creek; and thereupon entered an order directing the relator
as plaintiff to cause all such riparian owners to be brought
in and made parties to such action within sixty days from
April 8, 1908.

The relator then avers that Caribou or Cherry creek is a
stream arising in the hills and mountains lying to the north
and east of Kittitas valley, in the county of Kittitas, and
flows southerly through such valley a distance of some twenty
miles where it empties into the Yakima river; and that the
condition of the titles to the various lands along the creek are
unknown to the relator, and it is impossible for her to ascer-
tain who are the actual owners of such lands; and that the
withholding of the final adjudication of the cause until relator
shall bring in such owners and make them parties to the
action is unwarranted and without authority of law. It is
then averred that more than ninety days have elapsed since
the cause was submitted to the court for adjudication, but that
the court refuses and declines to render judgment therein;
whereupon she prayed that a writ of mandate issue com-
pelling the court to adjudicate the case upon the issues and
evidence presented.

The trial court, in response to the notice served upon it,
appeared and controverted the relator's application. In its
answer it admitted substantially all of the allegations of re-
lator. Answering further, however, it averred that no formal
demand or demand of any kind had been made upon the court
for a decision of the cause on the record as originally sub-
mitted, nor had any formal refusal to comply with the court's
order been made, but that on the contrary, the relator pur-

sued a course of conduct that had tended to mislead the court as to her intentions; that she had, among other things, appeared in court many months after the order to bring in further parties had been entered, and sought a renewal of an interlocutory order regulating the distribution of the water pending the trial of the action; and had at the same time questioned the sufficiency of the pleadings of certain riparian proprietors on the stream mentioned who had intervened in the action by leave of court since the court announced that further parties were necessary to a final adjudication of the case.

Further answering, the court averred that the relator in questioning the pleadings of such interveners raised no question as to their right to intervene, and particularly did not question their right on the ground that the case had been submitted to the court for adjudication and was then awaiting adjudication by the court; further averring that there were but two riparian owners who yet remained to be brought into action, and that certain of the defendants and interveners asking affirmative relief had applied for leave to make such riparian owners parties to the action, and that the court would proceed to make such an order, and to a further trial and determination of the cause upon its merits with all reasonable dispatch.

The relator does not controvert the court's return, but insists, nevertheless, that she is entitled to a decision on the record as it stood when the original submission of the cause was made. But whether this contention be true or not this court cannot try out the question in a mandamus proceeding. A mandamus will run to an inferior court to compel it to act when it holds a cause in abeyance and refuses to decide either one way or the other, but it does not lie to control judicial discretion. This latter, we think, the relator is asking us to do by this application. The trial court is not refusing to proceed to a final determination of the action before it, but is proceeding in a way that the relator conceives is a violation

of her rights. Her remedy for this error, if it be error, is not by mandamus. She must pursue the cause along the lines marked out by the trial court unto the end, and then seek a review of the judgment entered. She can, of course, on that review, if she has preserved her rights by proper objections, have reviewed any ruling made during the progress of the cause, even the refusal of the court to decide the controversy on the records originally submitted, but she cannot have a review of the question by the shorter route in the nature of a mandamus proceeding.

If the trial court has not proceeded in the cause with as much diligence as the exigencies of the case required, we think a part of the blame therefor can rest with the relator. Had she made known to the court her intent to refuse to bring in the required parties, and her desire to have the case heard on the record as first heard within a reasonable time after the promulgation of the order, doubtless the court would have at once given other parties to the cause that opportunity, and proceeded to a further hearing with its usual diligence. But the relator's action was not prompt, and the court seems to have acted with reasonable diligence after the relator made known the fact that she would not proceed on the lines marked out by the court.

The relator, seemingly, contends that the court should have dismissed the action, or dismissed it as to her, at least, on her refusal to comply with the court's order. But there were other parties to the action claiming affirmative relief, and the court could not properly dismiss it as to them without giving them an opportunity to bring in the parties the court deemed necessary to a final adjudication. Nor could it dismiss the relator from the action. Her continuance therein was necessary to a final adjudication of the cause as the court viewed the record. True, the court cannot compel her to participate in any further trial of the cause, but it can try it on the issues made by the pleadings of the other parties, and treat

her as a party making default, thus binding her by the final judgment entry.

The right of the court on its own motion to require additional parties to be brought in is also questioned. But this power is inherent in the court, and, moreover, is expressly conferred on it by statute, Bal. Code, § 4840 (P. C. § 269).

The application is denied.

RUDKIN, C. J., CHADWICK, GOSE, MORRIS, DUNBAR, CROW, and PARKER, JJ., concur.

MOUNT, J., took no part.